UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOSE LUIS GONZALEZ ORTEGA,

Petitioner,

v.

JULIO HERNANDEZ, et al.,

Respondent.

Case No. C26-2979-SKV

ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS

Petitioner is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He filed, through counsel, this 28 U.S.C. § 2241 habeas petition, challenging his February 9, 2026, immigration arrest and redetention as unconstitutional, and in violation of the Immigration and Nationality Act ("INA") and Administrative Procedure Act ("APA"). Dkt. 1, ¶¶ 63-78. The petition includes a sworn translated declaration from Petitioner. Dkt. 1-2. He seeks release from custody and related injunctive and declaratory relief. *Id.* at 20-21. Respondents filed a return (Dkt. 6), together with declarations from U.S. Department of Homeland Security ("DHS") Deportation Officer Gabriel Arambula (Dkt. 7) ("Arambula Decl.") and their counsel Lawrence Van Daley (Dkt. 8) ("Van Daley Decl."). Petitioner filed a traverse in reply. Dkt. 9.

Having considered the parties' submissions and the governing law, the Court GRANTS in part the petition (Dkt. 1) for the reasons set forth below.

## I. BACKGROUND

Petitioner is a native and citizen of Cuba, who applied for admission to the United States at the Calexico, California Port of Entry on July 19, 2024. Arambula Decl., ¶¶ 4-5. Customs and Border Protection ("CBP") determined that Petitioner lacked valid entry documents and was therefore inadmissible to the United States. *Id.* ¶¶ 5-6. ICE served Petitioner with a Notice to Appear ("NTA"), charging him with inadmissibility under the INA. *Id.* ¶ 6; *see* Dkt. 1-5. Petitioner was thereafter paroled into the United States and issued an I-94 (Arrival/Departure Record) which indicates Petitioner was "admitted" until July 18, 2026. *Id.* ¶ 7; *see* Van Daley Decl., ¶ 2, Ex. 1 at 2 (Form I-94).

While released, Petitioner received work authorization and worked to support his children. Dkt. 1, ¶ 2. He does not have any criminal history. *Id.*; *see also* Dkt. 1-3 at 3 (DHS Form I-213 indicating Petitioner has no criminal history).

On February 18, 2025, an immigration judge ("IJ") granted an unopposed motion to terminate Petitioner's removal proceedings to allow Petitioner to seek adjustment of status, based on Petitioner's "eligibility to adjust status . . . pursuant to the Cuban Adjustment Act." Arambula Decl., ¶ 8, 10; *see* Dkt. 1-8 (Order). Petitioner filed his application to Register Permanent Residence or Adjust Status on July 24, 2025. *Id.* ¶ 9.

On February 9, 2026, a Border Patrol Agent, identified as "Agent Neeley", *see* Van Daley Decl., ¶ 2, Ex. 2 at 4, observed Petitioner driving a vehicle in Butte, Montana. Arambula Decl., ¶ 11. According to Officer Arambula, Agent Neeley was familiar with Petitioner because of a recent Butte Silver Bow Sheriff's Office report alleging that Petitioner was being

investigated for "sexual harassment and stalking involving a minor female." *Id.* Agent Neeley pulled the vehicle over, confirmed Petitioner's identity, and took him into custody "based on [his] observations, [Petitioner's] statements, verified records, the fact that he was working without authorization, and his departure from his last known address as recorded in DHS databases[.]" *See* Van Daley Decl., ¶ 2, Ex. 2 at 5. Agent Neeley's report narrative also documents he determined that Petitioner posed a risk of absconding, *see id.*, but does not articulate in his report how he reached that conclusion. Agent Neeley's narrative asserts, "[t]he subject's parole expired on 04/18/2025, per the I-94 record, and DHS exercised its discretion to terminate parole on that date." *See id.* at 3. It is unclear from the record why Agent Neeley believed Petitioner's parole expired in April 2025. Respondents do not acknowledge Agent Neeley's mistake in their response. *See generally* Dkt. 6.

After Agent Neeley transferred custody of Petitioner, ICE served Petitioner with another NTA, charging him under INA § 212(a)(7)(A)(i)(I). Arambula Decl., ¶ 14. Officer Arambula states that the NTA operated to terminate Petitioner's parole "pursuant to 8 C.F.R. § 212.5(e)(2)(i)." *Id.* Petitioner was transferred to the NWIPC on February 13, 2026. *Id.* ¶ 16.

On March 18, 2026, Petitioner filed a motion to terminate his removal proceedings that was subsequently denied by an IJ on March 31, 2026. *Id.* ¶¶ 17-18. It appears DHS filed an amended NTA on March 30, 2026, that purports to set forth factual allegations "in lieu of those set forth in the original charging document."[1] *See* Dkt. 1-7 at 3. Neither Officer Arambula, nor Respondents, explain why ICE served Petitioner with an amended NTA.

[1] The only observable difference between the February 9, 2026, NTA and the March 30, 2026, amended NTA is that DHS alleged Petitioner to be a noncitizen "present in the United States who has not been admitted or paroled" in the former while the latter amended petition alleges Petitioner to be an "arriving [noncitizen]." *Compare* Dkt. 1-6 at 1, *with* Dkt. 1-7 at 3.

Petitioner's immigration proceedings were continued a number of times between April 2026 and August 2026 "to allow USCIS to adjudicate Petitioner's pending I-485." *Id.* ¶ 19.

On August 22, 2026, Petitioner filed the instant petition. Dkt. 1.

## II. LEGAL STANDARDS

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). A petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. DISCUSSION

Petitioner challenges his immigration detention under the INA, the APA, the Fourth Amendment, and the Due Process Clause of the Fifth Amendment. The overarching theme of Petitioner's claim is that ICE failed to comply with applicable laws, regulations, and the Constitution leading up to, and during, his February 9, 2026, redetention. *See generally* Dkt. 1. Respondents contend that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(1) following termination of his humanitarian parole, and that his redetention complied with due process when assessed under *Mathews v. Eldrige*, 424 U.S. 319 (1976). Dkt. 6 at 5-9. Respondents also assert that Petitioner's unlawful arrest claim under the Fourth Amendment is not cognizable in habeas and his APA claim is barred. *Id.* at 9-10.

### A. Statutory Detention Authority

The parties disagree on Petitioner's current statutory detention authority. As noted, Respondents contend Petitioner is subject to the expedited removal statute § 1225(b)(1)(A). Dkt.

6 at 4. Petitioner disagrees with Respondents' statutory classification, but asserts that even if he was subject to § 1225(b), his redetention was still entitled to due process. Dkt. 1, ¶¶ 38-42.

The Court observes that there is no evidence in the current evidentiary record that supports finding Petitioner was ever subject to the expedited removal process. For example, there is no Notice and Order of Expedited Removal authorized under INA Section 235(b)(1). *See* 8 C.F.R. 235.3(b)(2). Instead, DHS served Petitioner with a NTA under section 240 of the INA, the section under the INA characterized as laying out "regular" (*i.e.*, non-expedited) removal proceedings. *See* 8 U.S.C. § 1229a(a)(1), (b)(1); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020); *Innovation Law Lab v. McAleenan*, 924 F.3d 503, 507 (9th Cir. 2019).

Ultimately, the Court need not resolve the purported statutory authority governing Petitioner's detention. His claim arises under the Due Process Clause of the Fifth Amendment and challenges the lack of process provided at the time of his redetention rather than the current authority to detain. *See generally* Dkt. 1. Separate from any statutory reason to detain Petitioner, the government remained "obligat[ed] to effectuate the detention in a manner that comport[ed] with due process. *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) (citation omitted); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025).

### B. *Mathews* and Due Process

Due process rights extend "to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' . . . interests within the meaning of the Due

Process Clause of the Fifth . . . Amendment." *Mathews*, 424 U.S. at 332. "Due process generally "requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

The *Mathews* test balances three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

Courts in this District apply the *Mathews* framework in cases challenging the lawfulness of a noncitizen's redetention. *See, e.g., E.A. T.-B.*, 795 F. Supp. 3d at 1321 n.4 (collecting cases). As noted, both parties apply the *Mathews* framework to Petitioner's redetention but reach opposite conclusions. *Compare* Dkt. 1, ¶¶ 105-08, *with* Dkt. 5 at 6-8.

1. *Petitioner had a liberty interest in remaining free.*

Respondents acknowledge that "[p]hysical liberty is weighty", but assert Petitioner's was "diminished" because it "rested on discretionary parole" that did not constitute an "admission" and could also end when its purpose had been served. Dkt. 6 at 7 (citations omitted). According to Respondents, Petitioner, as a parolee, "[did] not hold the same interest as a person released after an individualized custody determination under 8 U.S.C. § 1226(a)." *Id.* at 7-8 (citing *Landon v. Plasencia*, 459 U.S. 21, 32-34 (1982); *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139-40 (2020).

Respondents' pin-cite to *Landon* says nothing about parolees, § 1226, or individual custody determinations. At issue in that case was whether the permanent resident [noncitizen] was entitled under the INA to have a deportation hearing, as opposed to an exclusion hearing—

the INA's old dual system that has since been replaced by "removal" proceedings." *Landon*, 459 U.S. at 26-27; *see Bingham v. Holder*, 637 F.3d 1040, 1044 (9th Cir. 2011). And while the Supreme Court acknowledged in *Thuraissigiam* that noncitizen parolees, "even those paroled elsewhere in the country for years," can be "treated for due process purposes as if stopped at the border," 591 U.S. at 139 (citation modified), the Court's holding was limited to "only those rights *regarding admission* that Congress provided by statute." *Id.* at 140 (emphasis added). *See Torres v. Hermosillo*, 2026 W 145715, at *3-4 (W.D. Wash. Jan. 20, 2026) (acknowledging "the Supreme Court has never applied the entry fiction doctrine [at issue in *Thuraissigiam*] . . . to constitutionally justify the *detention* of a person living freely, for years, within the United States").

When Petitioner was paroled in 2024, he took with him a liberty interest protected by the due process clause. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025). With Petitioner's parole came the "implicit promise" that parole "[would] be revoked only if [he] fail[ed] to live up to the parole conditions." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). Thus, although it may have been indeterminate, the Court finds Petitioner had a liberty interest in remaining free, the deprivation of which occurred at the time he was redetained. The first *Mathews* factor favors Petitioner.

2. *There was a high risk of erroneous deprivation.*

Respondents assert the risk of erroneously depriving Petitioner of his liberty interest was low because "[t]he operative facts were known at the encounter: no verifiable residence, an address of record in Florida, presence in Montana, unauthorized work, and a local investigation involving a minor female." Dkt. 6 at 8. The relevance of these "operative facts" and the logic of Respondents' argument is not clear to the Court. Even if Petitioner did not have a verifiable

residence, an address in Florida, was performing "unauthorized" work, and was involved in a police investigation, Respondents do not connect those facts to the lawfulness of Petitioner's redetention or otherwise explain why those unilaterally-decided "facts" found by Agent Neeley allowed DHS to revoke Petitioner's parole five months before it was set to expire. And Respondents completely ignore the fact that Agent Neeley wrongly believed Petitioner's parole had expired. As Respondents acknowledge here, *see* Dkt. 6 at 2; Arambula Decl., ¶ 7, it had not.

Moreover, if the written notice of termination was the operative document serving to revoke Petitioner's parole, *see* Dkt. 6 at 8, such revocation also required a DHS official or designee to determine the purposes of parole had been accomplished or neither humanitarian reasons nor public benefit warranted Petitioner's continued presence. *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(e)(2)(i). There is no evidence that any DHS official or designee made those required findings.

Revocation required "methods that comport with due process, such as a hearing in front of a neutral party to determine whether Petitioner's re-detainment is warranted." *Ramirez Tesara*, 800 F. Supp. 3d at 1136 (citing *Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023)); *see also Morrissey*, 408 U.S. at 482 ("By whatever name, the liberty [of parole] is valuable and must be seen as within the protection of the Fourteenth Amendment. Its termination calls for some orderly process, however informal."). Again, Respondents do not dispute that no such process occurred before Petitioner's February 9, 2026, redetention. *See* Dkt. 6 at 7.

Given Agent Neeley's erroneous belief that Petitioner's parole expired, the failure to follow parole revocation regulations, and the lack of any individualized pre-deprivation assessment of Petitioner's circumstances and whether detention was necessary, there was both a

high risk of erroneous deprivation and value in additional safeguards. This factor weighs in favor of Petitioner.

3. *The Government's interest did not justify forgoing pre-deprivation process.*

Respondents' asserted governmental interest reads, in full:

> The government's interest is at its peak. The Executive must be able to decide who may enter and to detain applicants for admission who are not clearly admissible. *Jennings* [*v. Rodriguez*], 583 U.S. 281, 286-87, 300-01 [2018]. Requiring a pre-deprivation, clear-and-convincing hearing before every restoration of an arriving alien to custody would disable 8 U.S.C. § 1182(d)(5)(A) and 8 U.S.C. § 1225(b)(1)(A). Written notice, proceedings under 8 U.S.C. § 1229a, and review under 28 U.S.C. § 2241 are constitutionally adequate.

Dkt. 6 at 8.

Respondents do not articulate what they mean when they assert § 1182(d)(5)(A) would be "disabled" if the government were first required to provide a hearing before redetaining a parolee. To the extent Respondents suggest it would be burdensome to provide a custody hearing prior to revoking the liberty of a noncitizen previously paroled to live in the United States for nearly two years, the Court need point only to the facts of this case to both reject that argument and emphasize the value of additional procedural safeguards. The Government has an interest in enforcing immigration laws, ensuring noncitizens appear for proceedings, protecting the public, and prompt execution of removal orders, *see Demore v. Kim*, 538 U.S. 510, 518 (2003), but its interest in doing so without first providing pre-deprivation process was low. *See, e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.").

In the immigration context, the Supreme Court has recognized only two valid purposes for civil detention: to mitigate the risks of danger to the community and to prevent flight.

*Zadvydas*, 533. U.S. at 690. Respondents do not suggest either of those purposes are served here. *See generally* Dkt. 6. And as discussed above, there was not just a risk that Petitioner's liberty would be erroneously deprived—it *was* erroneously deprived when Agent Neeley wrongly believed Petitioner's parole had expired and otherwise failed to comply with revocation regulations.

In sum, the *Mathews* factors favor Petitioner. Given the liberty interest at stake, the high risk of erroneous deprivation, and the governmental interest alleged, "providing effectively no pre-detention process to Petitioner[] here was constitutionally deficient." *Aucatoma v. Hernandez*, 2026 WL 1265541, at *8 (W.D. Wash. May 8, 2026); *see also Subham v. Noem*, 2026 WL 497101, at *4 (W.D. Wash. Feb. 23, 2026). Habeas relief, and specifically release from immigration custody, is the appropriate and constitutionally required remedy. *See Aucatoma*, 2026 WL 1265541, at *8 (and the cases cited therein).

In finding Petitioner's redetention did not comply with due process when assessed under *Mathews*, the Court does not reach Petitioner's remaining claims under the INA, APA, and Fourth Amendment. Those claims are DENIED as MOOT.

Petitioner also seeks injunctive relief, *see* Dkt. 1 at 20, but does not develop a factual record or provide legal authority in support. Petitioner's request to enjoin his future redetention during removal proceedings is therefore DENIED.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS in part the petition, Dkt. 1, and ORDERS that Petitioner be released from immigration detention **within twenty-four (24) hours of this Order**, subject to reasonable conditions of release not to exceed those previously imposed on Petitioner. Respondents shall file a certification within forty-eight (48) hours that Petitioner has

been released. Petitioner's remaining claims are DENIED as MOOT. Petitioner's request for injunctive relief is DENIED as unbriefed.

Any fee petition shall be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

DATED this 23rd day of September, 2026.

S. KATE VAUGHAN
United States Magistrate Judge